TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00058-CV






Lake Medina Conservation Society, Inc./Bexar-Medina-Atascosa Counties


WCID No. 1; and Canyon Regional Water Authority, Appellants



v.



Texas Natural Resource Conservation Commission; Bexar-Medina-Atascosa Counties


WCID No. 1; and Canyon Regional Water Authority/Lake Medina


Conservation Society, Inc., Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 97-07444, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING 




 

 The Lake Medina Conservation Society, Inc. ("LAMCOS") appeals from a district
court judgment affirming an order of the Texas Natural Resource Conservation Commission (the
"Commission"). The order amends a certificate of adjudication pertaining to water rights held by
Bexar-Medina-Atascosa Counties WCID No. 1 ("BMA"). BMA and the Canyon Regional Water
Authority ("CRWA") appeal from the district court order overruling jurisdictional pleas attacking
LAMCOS' standing. We will affirm the judgment of the district court.


THE CONTROVERSY


 BMA is a water-control and improvement district, the boundaries of which
encompass land in Bexar, Medina, and Atascosa counties. Before the Commission proceedings,
BMA was authorized to divert for irrigation use 65,830 acre-feet of water impounded in its
reservoir at Lake Medina. (1) On April 12, 1993, BMA applied for an amendment to its certificate
of adjudication. (2) The requested amendment would authorize BMA to divert the 65,830 acre-feet
for municipal and industrial uses as well as irrigation uses.

 BMA gave notice of its application as required by section 11.132 of the Water Code
and sections 295.151, 295.152, and 295.153 of the Commission's rules. (3) The Commission held
public hearings in San Antonio on January 24, 1994, and in Austin on September 12 through 16
and September 19 and 20, 1994. Several parties admitted to the contested case, including
LAMCOS, opposed the requested amendment. (4)

 LAMCOS is an organization of about 600 members having a variety of interests in
Lake Medina. Members include persons who own lakefront property or businesses on the lake
and others who draw water from private wells near the lake. LAMCOS opposed BMA's
application on the ground that the proposed additional uses would result in BMA's consistently
taking the entire volume of water it is authorized to use (65,830 acre-feet), lowering the lake level
and affecting adversely members' businesses, water wells, and recreational use of the lake.

 After the hearings, the hearings examiner issued a Proposal for Decision ("PFD"). 
The Commission adopted the examiner's recommendations, imposed some additional 
requirements, and granted BMA's application in an order issued February 21, 1995 (the "1995
Order"). The order authorized BMA to apply its 65,830 acre-feet of water to "multiple uses,"
including irrigation, municipal, and industrial uses. (5) The amendment did not specify a quantity
of water authorized for any particular use: BMA might divert up to 65,830 acre-feet for any one
of the specified purposes, or any combination of those purposes, so long as the aggregate amount
of water diverted did not exceed 65,830 acre-feet. The amendment did not change the total
volume of water BMA was authorized to divert, nor did it authorize any new diversion points.

 The Commission so amended BMA's certificate although the agency agreed with
LAMCOS that the permit would likely result in BMA more consistently diverting the full volume
of water authorized in its certificate of adjudication. The Commission concluded, however, that
BMA's water resources were a component of limited water resources in the region; and because
of a trend in the area toward increased urbanization and reduced agricultural activity, a portion
of BMA's water would be used beneficially to supplement limited municipal and industrial
groundwater supplies in the region.

 LAMCOS sued in district court for judicial review of the 1995 order. (6) LAMCOS
contended the order was unlawful because the law required that BMA's certificate set forth a
specific volume of water for each authorized use. (7) The district court agreed, reversed the 1995
Order, and "remanded [the matter] to the Commission for further proceedings." (8) No party
appealed from the district court judgment.

 After the remand, BMA withdrew its request to divert water to industrial use and
moved that the Commission, "based on the existing record," authorize BMA to divert 19,974
acre-feet to municipal use and the balance to irrigation use. The Commission considered BMA's
motion and the pending application at a public meeting held April 2, 1997. LAMCOS participated
in the hearing through its attorney. The Commission, by order dated April 11, 1997 (the "1997
Order"), amended BMA's certificate as requested in the motion: BMA might divert up to 19,974
acre-feet of water for municipal use and the remaining 45,856 acre-feet for irrigation.

 LAMCOS sued for judicial review of the 1997 Order, contending that after the
1995 Order was reversed BMA was required to file a new application and the Commission was
required to hold a new evidentiary hearing thereon. The district court disagreed and sustained the
1997 Order. LAMCOS appeals now from the resulting judgment.

DISCUSSION AND HOLDINGS


Standing in the District Court

 When LAMCOS sued in the present cause for judicial review of the Commission's
1997 Order, BMA, CRWA, and the County of Bandera intervened in defense of the order. The
three intervenors filed in the trial court a joint plea to the jurisdiction challenging LAMCOS's
standing to contest the 1997 Order. The attorney general filed a similar plea to the jurisdiction
on behalf of the Commission. The district court overruled the pleas. BMA and CRWA appeal
from the trial-court action and repeat their contention that LAMCOS lacks standing to challenge
in district court the 1997 Order. (9)

 The Texas Administrative Procedure Act ("APA") provides that a losing party in
a contested case may, after exhausting administrative remedies, seek judicial review if the party
is "aggrieved" by an agency action. Tex. Gov't Code Ann. § 2001.171 (West 1998). LAMCOS
is not itself injured in fact by the agency decision. LAMCOS sued based upon the effect of the
agency decision upon members whom LAMCOS represented. For LAMCOS to maintain an
action in that capacity, the record must show the following: (1) LAMCOS members otherwise
have standing to sue in their own right; (2) the interests LAMCOS seeks to protect are germane
to its organizational purpose; and (3) neither the claim asserted nor the relief requested requires
the participation of individual members in the action. Texas Ass'n of Bus. v. Texas Air Control
Bd., 852 S.W.2d 440, 447 (Tex. 1993).

 We find the record supports the district court determination that LAMCOS may
represent its members. The amendment, if upheld, would add an additional authorized use to
BMA's certificate. The Commission concluded that BMA will likely divert more water in future
years than it has in the past. LAMCOS is organized specifically to protect its members' interest
in the lake; thus, LAMCOS' interest is germane to the organizational purpose. The relief
requested by LAMCOS--invalidation of the amendment to BMA's certificate--does not require
the participation of individual members in the appeal.

 The only real dispute seems to be BMA's claim that members of the organization
would not be entitled to sue in their own right. BMA argues that LAMCOS's interests are
insufficient to show any specific or peculiar injury to itself or its members as a result of the
Commission's amending BMA's certificate. The general rule is that standing depends upon some
interest peculiar to the person or entity individually and not as a member of the general public. 
Hunt v. Bass, 664 S.W.2d 323, 324 (Tex. 1984). Specifically, a plaintiff has standing to sue if: 
(1) he has sustained, or is immediately in danger of sustaining, some direct injury as a result of
the wrongful act of which he complains; (2) there is a direct relationship between the alleged
injury and the claim to be adjudicated; (3) the plaintiff has a personal stake in the controversy; (4)
the challenged action has caused the plaintiff some injury in fact, either economic, recreational,
environmental, or otherwise; or (5) the plaintiff is an appropriate party to assert the public interest
in the matter as well as his own interest. Billy B., Inc. v. Board of Trustees, 717 S.W.2d 156, 158
(Tex. App.-- Houston [1st Dist.] 1986, no writ); Housing Auth. v. State ex rel. Velasquez, 539
S.W.2d 911, 913-14 (Tex. Civ. App.--Corpus Christi 1976, writ ref'd n.r.e.).

 The members of LAMCOS have shown various interests in the lake, including
ownership interest in lakefront property, that will be affected by the amendment. The impact of
lower lake levels on owners of waterfront property, waterfront businesses, and private wells in
the area constitutes a sufficiently particularized injury to distinguish the members' injury from that
of the public at large. See Hooks v. Texas Dep't of Water Resources, 611 S.W.2d 417, 419 (Tex.
1981); Texas Rivers Protection Ass'n v. Texas Natural Resource Conservation Comm'n, 910
S.W.2d 147, 151 (Tex. App.--Austin 1995, writ denied).

 We overrule BMA's and CRWA's points of error.


Subject-Matter Jurisdiction in the Agency

 LAMCOS contends that after the district court reversed the 1995 Commission order
and remanded the contested case to the agency, the Commission lost jurisdiction to take any
further action on BMA's 1993 application. LAMCOS points out that an administrative agency
lacks authority to modify its previous final orders absent a statute conferring that authority. See
Sexton v. Mount Olivet Cemetery Ass'n, 720 S.W.2d 129, 137 (Tex. App.--Austin 1986, writ
ref'd n.r.e.). Once the Commission issued the 1995 Order and denied LAMCOS's motion for
rehearing based on that order, LAMCOS argues, the Commission could take no further action on
BMA's application. We disagree. Sexton is inapplicable. (10)

It is a guiding principle of administrative law . . . that "an administrative
determination in which is embedded a legal question open to judicial review does
not impliedly foreclose the administrative agency, after its error has been
corrected, from enforcing the legislative policy committed to its charge."



Prairie Constr. Co. v. Operating Eng'rs, 425 U.S. 800, 806 (1976) (citation omitted). The
reviewing court decided the 1995 Commission order was not a legally effective order because of
the error embedded therein. Following remand, the Commission was again charged with the
statutory duty of assessing and determining BMA's application in light of the applicable statutes
and rules. See Lone Star Greyhound Park, Inc. v. Texas Racing Comm'n, 863 S.W.2d 742, 746
(Tex. App.--Austin 1993, writ denied); First Sav. & Loan Ass'n of Del Rio, Tex. v. Lewis, 512
S.W.2d 62, 64 (Tex. Civ. App.--Austin 1974, writ ref'd n.r.e.); 2 Cooper, State Administrative
Law § 9(B), at 773 (1965). (11) We hold accordingly.


Commission Violation of Its Own Rules

 In LAMCOS's first point of error, it contends the district court erred in affirming
the 1997 Order because, after remand, the Commission could decide the contested case based
solely upon a new or amended application filed by BMA, rather than BMA's original application.

 The Commission has general jurisdiction over water rights in the state, including
the issuance of permits and adjudication certificates. See Tex. Water Code Ann. § 5.013(a)(1)
(West Supp. 1998). The Commission is empowered to hold hearings and make decisions
respecting its jurisdiction. Id. § 5.102 (West 1988). (12) As part of its duties, the Commission must
promulgate rules necessary to carry out its powers and duties. Id. § 5.103 (West 1988 & Supp.
1998).

 LAMCOS contends the Commission violated two agency rules that govern the
procedure by which applicants may amend their water-use permits. (13) Rule 295.2 provides:


Upon express written or verbal approval of the applicant or the applicant's agent,
any employee of the commission may make nonsubstantive changes in any
documents submitted by the applicant. Substantive changes in an application may
be made only by the applicant or the applicant's agent who submitted the
application and only in the form of a written, notarized amendment to the
application . . . provided, however, that no substantive changes may be made after
an application has been filed with the chief clerk of the commission by the
executive director.



30 Texas Admin. Code § 295.2 (emphasis added). Rule 295.201 provides:



No substantive changes may be made [to an application] after an application has
been filed with the chief clerk of the commission by the executive director.



Id. § 295.201 (emphasis added).

 LAMCOS contends that BMA's amended application, which deleted its request for
industrial use and specified a quantity of water for municipal use, amounts to a "substantive
change." (14) LAMCOS reasons that Commission rules 295.2 and 295.201 must be interpreted and
enforced to require BMA to withdraw its application and submit a new, amended application.

 We hold the Commission did not abuse its discretion by departing from a strict
adherence to what Rule 295.2 and Rule 295.201 require. The two rules were not intended
primarily to confer procedural benefits upon a party to the case; they were intended rather to aid
the Commission in the efficient processing of such applications. See Smith v. Houston Chem.
Servs., Inc., 872 S.W.2d 252, 259 (Tex. App.--Austin 1994, writ denied); see also 11 Tex. Reg.
2323, 2324 (1986) (noting that both Rule 295.2 and Rule 295.201 were revised in response to
comments from the Commission's staff concerning the elimination of unnecessary and incomplete
provisions). The Commission was therefore free to relax the requirements of the rules, and the
agency's doing so in a particular case is "not reviewable except upon a showing of substantial
prejudice to the complaining party." Smith, 872 S.W.2d at 260 (citations omitted); see also Peter
Raven-Hansen, Regulatory Estoppel: When Agencies Break their Own "Laws," 64 Tex. L. Rev.
1, 23 (1985).

 It does not appear that any prejudice resulted from the Commission's action. We
overrule LAMCOS' first point of error.


Agency Refusal to Reopen the Case After Remand

 LAMCOS contends the Commission, by sustaining after remand BMA's motion to
decide the contested case based upon "the existing record," deprived LAMCOS of its right to a
full and fair hearing. LAMCOS complains first that BMA's 1993 application did not put
interested parties on notice of BMA's intention to designate 19,974 acre-feet of water for
municipal use. Moreover, LAMCOS contends, the Commission improperly based its 1997 order
on outdated evidence. To prevail, LAMCOS must show the Commission abused its discretion in
not requiring a new proceeding, resulting in prejudice to LAMCOS' substantial rights. See Tex.
Gov't Code Ann. § 2001.174(A)(2) (West 1998).

 We need not consider whether the Commission abused its discretion in the matter
of notice. LAMCOS has shown no prejudice resulting from want of notice. LAMCOS
participated, through its legal representative, in the April 2, 1997, meeting in which the
Commission determined to decide the contested case based on "the existing record." Moreover,
LAMCOS failed to explain at the April 2 meeting and does not explain here how the original
proceedings, in which the Commission assessed the effect of a permit application that would allow
BMA to divert all of its appropriated water for municipal use, did not implicitly encompass the
effect of BMA using only part of that appropriated water for municipal use. During the hearing
on the application, BMA's authority to divert the entire 65,830 acre-feet of water for municipal
use was essentially uncontested. The hearings focused on whether the application met the statutory
criteria (15) that governed the proceeding, such as whether the application contemplated the
application of water to a "beneficial use"; whether the use would impair existing water rights or
vested riparian rights; whether the use would be detrimental to the public welfare, and what effect
the use would have on bays and estuaries, instream uses, (16) and fish and wildlife habitats. (17) 

 LAMCOS contends the Commission abused its discretion by issuing the 1997 order
based on outdated evidence. LAMCOS argues that the findings of fact and conclusions of law (18)
stated in the 1995 order, and inferred from the evidence in "the existing record," were deficient
because they


do not take into consideration the changes that have taken place in the watershed
in question since 1994, with respect to the water level in Lake Medina, the drought
in the area, increased knowledge of the relationship between Lake Medina and the
Edwards Aquifer, or the changes in demands for the water.


 We conclude the agency did not abuse its discretion in declining to reopen the
evidence. (19) A decision whether to reopen the evidence is within agency discretion and is reserved
for a variety of extraordinary circumstances. See Koch, Administrative Law and Practice,
§ 5.71[1] at 273 (1998). In cases like the present, where re-opening the evidence is urged
following judicial remand of a contested case to an agency, "the agency need consider only those
parts of its decision which were rejected by the reviewing court." Id. at 276. The Commission,
on remand, complied in its 1997 order with the reviewing court's decision that specific volumes
of water for each use must be set out in the final order. Moreover, the Commission could
reasonably conclude from the record that the changed circumstances urged by LAMCOS did not
affect the fundamental ground of decision reflected in the findings of fact and conclusions of law
stated in the 1995 order: that in the circumstances shown municipal and irrigation uses must have
priority, as a matter of policy, over recreational use and well-water availability--a basis of the
agency decision not rejected by any court. See Cross-Sound Ferry Servs., Inc. v. I.C.C., 934 F.2d
327, 332 (D.C. Cir. 1991); Alvarez-Madrigal v. I.N.S., 808 F.2d 705, 707 (9th Cir. 1987); Sunset
Square Ltd. v. Miami County Bd. of Revision, 552 N.E.2d 632, 635 (Ohio 1990).

 We hold the Commission did not abuse its discretion.


Impact on Fish and Wildlife Habitats

 In its final point of error, LAMCOS contends the district court erred in affirming
the 1997 Order because the Commission failed to determine the impact a reduction in water levels
would have upon fish and wildlife habitats in the affected area.

 Commission Rule 297.49 states as follows:


In its consideration of an application for a permit or amendment to store, take, or
divert state water, the commission shall assess the effects, if any, of the issuance
of the permit on fish and wildlife habitats.



30 Tex. Admin. Code § 297.49 (1997).

 Based on the evidence received in the hearing on BMA's original application, the
Commission concluded that granting BMA's application for a multi-use permit would have "no
significant impact upon fish and wildlife habitats in Diversion and Medina Lakes." The
Commission based this finding of ultimate fact on evidence regarding affects on fish and wildlife
habitats in the event BMA more consistently diverted all of its authorized 65,830 acre-feet of water
each year under the multi-use permit.

 After remand from the district court, the Commission concluded, based on "the
existing record," that BMA's amended application, seeking a more limited amendment of its
existing diversion rights, would likewise have no significant impact upon fish and wildlife habitats
in the area. LAMCOS does not suggest how BMA's new application, which gives BMA less
flexibility in its diversion of water, could result in a different or more severe impact upon fish and
wildlife habitats.

 Because LAMCOS has failed to show substantial prejudice resulting from the
Commission decision, we overrule LAMCOS' final point of error.

 We affirm the district court judgment.



 

 John Powers, Justice

Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: October 29, 1998

Publish

1. BMA was actually authorized to divert a slightly greater volume of water, but this appeal
concerns only the diversion of 65,830 acre-feet.
2. A "certificate of adjudication" confirms the holder's authority to take water from a stream
under a claim of right. See Tex. Water Code Ann. § 11.304-.324 (West 1988).
3. Texas Water Code Ann. § 11.132 (West 1988); 30 Tex. Admin. Code §§ 295.151, .152,
.153 (1997).
4. Others admitted as parties included the TNRCC's Public Interest Counsel, Texas Parks and
Wildlife Department, Bandera County, the City of Bandera, Bandera County Freshwater Supply
District No. 1, Bexar Metropolitan Water District, Canyon Regional Water Authority, San
Antonio River Authority, San Antonio Water System, Thousand Trails, Inc., Southside Alliance
for Economic Development, Thelma Area Neighborhood Corporation, Thelka Neighborhood
Association, Faron Bazzrea, and Chris Heyen. 
5. Irrigation, municipal, and industrial uses are by statute made beneficial uses for which state
water may be appropriated. See Tex. Water Code Ann. §§ 11.023, .024, .123 (West 1988).
6. Bandera County joined LAMCOS in challenging the 1995 order.
7. See Act of June 16, 1977, 65th Leg., R.S., ch. 870, § 1, 1977 Tex. Gen. Laws 2217 (Tex.
Water Code Ann. § 11.023(e), since amended).
8. According to the Commission, the legislature has since authorized the Commission to
approve "multiple use" permits without specifying exact quantities for each use. See Tex. Water
Code Ann. § 11.023(e), .124(a)(4), .135(b)(5) (West 1988 & Supp. 1998). See also Act of June
19, 1997, 75th Leg., R.S., ch. 1010, § 2.18, 1997 Tex. Gen. Laws 3626 (West).
9. Bandera County does not appeal from the district-court action.
10. Sexton dealt with an agency's power to reopen administrative proceedings with a view
toward reconsidering an earlier agency adjudicative order that was never set aside on judicial
review and had, indeed, been in effect for three years. Sexton v. Mount Olivet Cemetery Ass'n,
720 S.W.2d 129, 138 (Tex. App.--Austin 1986, writ ref'd n.r.e). In the present case, the 1995
order was set aside on judicial review.
11. LAMCOS seems to argue the trial court invalidated BMA's original application; however,
the final judgment rendered by the trial court reverses only the Commission order.
12. Under its rules, the Commission, when presented with an application to modify existing
water rights, is authorized to:


grant or deny [the] application in whole or in part, suspend the authority to conduct
an activity . . . dismiss proceedings, amend or modify [the] permit or order, or take
any other appropriate action.


30 Tex. Admin. Code § 50.17(a) (1997).
13. The rules cited actually govern applications for new permits; however, Rule 295.71 states
that applications to amend existing permits "shall be recorded in the same manner" as a new
application. See 30 Tex. Admin. Code § 295.71 (1997).
14. LAMCOS relies on a Commission article that gives examples of "substantive changes" in
the context of Rule 295.201 and states the consequences of changing a permit:


Substantive changes include, but are not limited to, a change in the identity of the
proposed water user, increase in the requested appropriative amount of water, a
significant change in diversion point or rate, or change in purpose or place of use. 
If a substantive change is necessary, the applicant must withdraw his application and
resubmit a new, amended application.


See TNRCC's A Regulatory Guidance Document to Applications to Divert, Store or Use State
Water, 18 (June 1995).
15. The commission shall grant [an] application [for proposed water rights] only if:


(1) the application conforms to the requirements of [Chapter 11 of the Water Code]
and is accompanied by the prescribed fee;


(2) unappropriated water is available in the source of supply;


(3) the proposed appropriation:


 (A) contemplates the application of water to any beneficial use;


 (B) does not impair existing water rights or vested riparian rights; and


 (C) is not detrimental to the public welfare; and


(4) the applicant has provided evidence that reasonable diligence will be used to
avoid waste and achieve water conservation as defined by Subdivision (8)(B),
section 11.02, of [the Water Code].


Tex. Water Code Ann. § 11.134(b) (West 1988).
16. Tex. Water Code Ann. § 11.147 (West 1988).
17. Tex. Water Code Ann. § 11.152 (West 1988).
18.   The 1997 final order sets forth the following conclusions of law:


(1) the contemplated use of water for municipal and industrial purposes constituted
a beneficial use of state water;


(2) the Commission adequately assessed the effects of the amendment upon Texas
bays and estuaries, existing in-stream uses, water quality in the state, and fish
and wildlife habitats;


(3) the amendment would not impair existing water rights or vested riparian rights;


(4) the amendment would not be detrimental to the public welfare;


(5) BMA had provided evidence that it would use reasonable diligence to avoid
waste and achieve water conservation as defined by section 11.002(8)(B) of the
Water Code; and


(6) BMA had demonstrated reasonable impending need or demand for water for
municipal and industrial purposes.


Findings of fact stated in the order support the foregoing determinations.


Item (5) is not, of course, a conclusion of law. The fact that a party has "provided
evidence" on a matter is not a finding of material fact; it determines nothing from the
evidence "provided." See John Powers, Judicial Review of the Findings of Fact
Made By Texas Administrative Agencies in Contested Cases, 16 Texas Tech L. Rev.
475, 476-83 (1985).
19. The question of whether the Commission properly exercised the power to reopen the case
after remand is independent of the question of whether the Commission had that statutory power.
Sexton makes it clear that the question of whether an agency has the power to reopen
administrative proceedings, with a view toward reconsidering its earlier adjudicative order, is a
question "to be determined by an interpretation of the statute that vests the agency with
administrative power." Sexton, 720 S.W.2d at 138.


 Water Code § 11.122(b) gives the Commission authority to amend a previously issued order
based on evidence related to the impact the change will have upon other water-right holders and
the environment. Tex. Water Code § 11.122(b) (West Supp. 1998). A statute that authorizes the
amendment of a previously issued permit grants an "express and specific . . . power to reopen an
administrative proceeding." Sexton, 720 S.W.2d at 139.

Substantive changes include
, but are not limited to, a change in the identity of the
proposed water user, increase in the requested appropriative amount of water, a
significant change in diversion point or rate, or change in purpose or place of use. 
If a substantive change is necessary, the applicant must withdraw his application and
resubmit a new, amended application.


See TNRCC's A Regulatory Guidance Document to Applications to Divert, Store or Use State
Water, 18 (June 1995).
15. The commission shall grant [an] application [for proposed water rights] only if:


(1) the application conforms to the requirements of [Chapter 11 of the Water Code]
and is accompanied by the prescribed fee;


(2) unappropriated water is available in the source of supply;


(3) the proposed appropriation:


 (A) contemplates the application of water to any beneficial use;


 (B) does not impair existing water rights or vested riparian rights; and


 (C) is not detrimental to the public welfare; and


(4) the applicant has provided evidence that reasonable diligence will be used to
avoid waste and achieve water conservation as defined by Subdivision (8)(B),
section 11.02, of [the Water Code].


Tex. Water Code Ann. § 11.134(b) (West 1988).
16. Tex. Water Code Ann. § 11.147 (West 1988).
17. Tex. Water Code Ann. § 11.152 (West 1988).
18.   The 1997 final order sets forth the following conclusions of law:


(1) the contemplated use of water for municipal and industrial purposes constituted
a beneficial use of state water;


(2) the Commission adequately assessed the effects of the amendment upon Texas
bays and estuaries, existing in-stream uses, water quality in the state, and fish
and wildlife habitats;


(3) the amendment would not impair existing water rights or vested riparian rights;


(4) the amendment would not be detrimental to the public welfare;


(5) BMA had provided evidence that it would use reasonable diligence to avoid
waste and achieve water conservation as defined by section 11.002(8)(B) of the
Water Code; and


(6) BMA had demonstrated reasonable impending need or demand for water for
municipal and industrial purposes.


Findings of fact stated in the order support the foregoing determinations.


Item (5) is not, of course, a conclusion of law. The fact that a party has "provided
evidence" on a matter is not a finding of material fact; it determines nothing from the
evidence "provided." See John Powers, Judicial Review of the Findings of Fact
Made By Texas Administrative Agencies in Contested Cases, 16 Texas Tech L. Rev.
475, 476-83 (1985).
19. The question of whether the Commission properly exercised the power to reopen the case
after remand is independent of the question of whether the Commission had that statutory power.
Sexton makes it clear that the question of whether an agency has the power to reopen
administrative proceedings, with a view toward reconsidering its earlier adjudicative order, is a
question "to be determined by an interpretation of the statute that vests the agency with
administrative power." Sexton, 720 S.W.2d at 138.


 Water Code § 11.122(b) gives the Commission authority to amend a previously issued order
based on evidence related to the impact the change will have upon other water-right holders and
the environment. Tex. Water Code § 11.122(b) (West Supp. 1998). A statute that authorizes the
amendment of a previously issued p