TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00117-CV






United Copper Industries, Inc. and Texas Natural Resource


Conservation Commission, Appellants




v.




Joe Grissom, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. 98-06046, HONORABLE MARGARET COOPER, JUDGE PRESIDING







 This is a suit for judicial review of a Texas Natural Resource Conservation
Commission (the "TNRCC" or "Commission") order granting an air quality permit application
submitted by United Copper Industries, Inc. ("United Copper") and denying Joe Grissom's
request for an adjudicative hearing on whether the permit should be granted. Upon judicial
review of the decision, the district court reversed the Commission's order and remanded the cause
to the Commission for further proceedings. United Copper and the Commission appeal the
district court's judgment, citing three independent grounds for reversal. We will reverse the
judgment of the district court and affirm the final decision of the Commission.


BACKGROUND


 In 1997, United Copper applied to the Commission for a permit to construct and
operate two copper melting furnaces in Denton, Texas. See Tex. Health & Safety Code Ann.
§ 382.0518 (West Supp. 2000). United Copper intended to use these facilities to produce
commercial grade copper rod that would be used to manufacture electrical wire and cable. In its
application, United Copper identified the types of emissions the furnaces would release into the
environment--primarily copper and lead particulate matter--and attached the results of an "air
dispersion computer model" indicating the maximum ground-level concentrations of the
contaminants that it predicted would result from its operations. After considering the application
and the attached research data, the TNRCC determined that the proposed facilities would not have
any negative impact on the health or property interests of the public in the surrounding area, a
finding that is necessary before the TNRCC may issue an air quality permit. See id.
§ 382.0518(b); 30 Tex. Admin. Code § 116.111 (2)(A)(i) (1999). United Copper then alerted the
public of its permit application by publishing a notice in a local newspaper and posting signs
around the proposed construction site as required by statute. See Tex. Health & Safety Code Ann.
§ 382.056.

 Shortly thereafter, Grissom, who lived about two miles from the proposed facilities,
sent a letter to the TNRCC requesting a public hearing on United Copper's permit application. (1) 
In his written hearing request, Grissom expressed his concern about the negative effects he
anticipated the facilities would have on his health, as well as the health of his two sons, both of
whom suffer from serious asthmatic conditions. In response to Grissom's letter, United Copper
and the Commission's executive director filed written replies urging the Commission to deny
Grissom's request for a hearing. See 30 Tex. Admin. Code § 55.26(e) (1999) (permitting
TNRCC director, Office of Public Interest Council, and permit applicant to submit written
responses to hearing requests). Grissom was served with copies of both responses. United
Copper maintained in its response that Grissom's request should be denied because: (1) Grissom
was not an "affected person" entitled to a contested-case hearing, (2) the hearing request was
"unreasonable," and (3) Grissom failed to present any competent evidence in support of his
request. The Commission's director, on the other hand, contended in his response that although
Grissom was an "affected person" based on the factors set forth in the agency's rules, Grissom's
request nevertheless should be denied solely on the ground that it was "unreasonable." He argued
that it was unreasonable because the uncontroverted evidence submitted with United Copper's
application established that the emissions would probably not negatively impact Grissom, his
family, or any other members of the public.

 Grissom did not reply to either of the responses filed by United Copper and the
Commission's director, despite notice from the Commission that he was permitted to do so. Apart
from the hearing request itself, the only item filed in support of Grissom's request was a report
issued by the Office of Public Interest Council ("OPIC"), a division of the Commission that
assists those challenging the denial of a permit application or hearing request. Citing its concern
for procedural fairness, OPIC recommended that the TNRCC grant Grissom's request. OPIC
reasoned that if the Commission were to deny his request, Grissom would be denied fair process
because he would be refused an opportunity to prove the merits of his case on the basis of
evidence that he had not been given a fair opportunity to refute.

 The Commission gave Grissom and United Copper one month's notice of the public
meeting scheduled to evaluate and act on Grissom's hearing request. After reviewing Grissom's
request and OPIC's response, along with the responses filed by United Copper and the
Commission's director, the Commission issued a decision at the scheduled meeting in which it
denied Grissom's hearing request after concluding that he had not met the requirements set out
in the Commission's rules; it also granted the air quality permit United Copper needed in order
to construct and operate the furnaces.

 Grissom proceeded to file suit in district court, seeking judicial review of the
Commission's decision. (2) Grissom contended that he was entitled to a public hearing where he
would have an opportunity to offer competent evidence in support of his request. The TNRCC
responded with a general denial, and United Copper intervened to protect its interest in the permit
it had been granted. The district court ultimately agreed with Grissom and decided that the
Commission erred in determining that the hearing request was not supported by competent
evidence without first providing Grissom an opportunity to present evidence at an adjudicative
hearing. In its final judgment, the district court reversed the TNRCC's order and remanded the
cause to the Commission for an adjudicative hearing to give Grissom an opportunity to present
competent evidence in support of his request.

 United Copper and the Commission now appeal the district court's final judgment,
maintaining that the Commission properly denied the hearing request because: (1) Grissom was
not an "affected person" entitled to a contested-case hearing, (2) the hearing request was
"unreasonable," and (3) Grissom failed to present any competent evidence in support of his
request.


STANDARD OF REVIEW

 Grissom filed his request for a contested-case hearing in response to the air quality
permit application United Copper submitted in accordance with the Texas Clean Air Act. See
Tex. Health & Safety Code Ann. §§ 382.001-.143 (West 1992 & Supp. 2000). Authority to sue
the Commission under the Act is found in section 382.032(a) (West Supp. 2000), which provides
that "[a] person affected by a ruling, order, decision, or other act of the commission or of the
executive director . . . may appeal the action by filing a petition in a district court of Travis
County." Tex. Health & Safety Code Ann. § 382.032(a). When judicial review of the decision
is sought, the only issue for the court to decide is "whether the [Commission's] action is invalid,
arbitrary, or unreasonable." Id. § 382.032(e). This standard of review is unique in the
substantial amount of deference it provides the Commission. This Court has applied this unusual
standard of review only once before. See Smith v. Houston Chem. Servs., Inc., 872 S.W.2d 252,
257 n.2 (Tex. App.--Austin 1994, writ denied). In Smith, we indicated that this standard seems
to imply the applicability of the scope of review set forth in the Administrative Procedure Act (the
"APA"). See id.; Tex. Gov't Code Ann. § 2001.174 (West 2000). Because the statutory grounds
for reversal in the APA are legal questions subject to de novo review by a court of appeals, we
will treat as a question of law the issue of whether the Commission's order was invalid, arbitrary,
or unreasonable. See Texas Dep't of Public Safety v. Doyle, 987 S.W.2d 897, 899 (Tex.
App.--Fort Worth 1998, no pet.); cf. In re Humphreys, 880 S.W.2d 402, 404 (Tex. 1994).


DISCUSSION

 The TNRCC is charged with the duty of administering many of the laws designed
to safeguard this state's environment and conserve its natural resources. This includes the crucial
task of overseeing the regulatory protection of the State's air quality. See Tex. Health & Safety
Code Ann. § 382.011 (West Supp. 2000). The Legislature was undoubtedly mindful of the
magnitude of this responsibility when it enacted the Texas Clean Air Act (the "Act"), which
begins:


 The policy of this state and the purpose of this chapter are to safeguard the
state's air resources from pollution by controlling or abating air pollution and
emissions of air contaminants, consistent with the protection of public health,
general welfare, and physical property, including the esthetic enjoyment of air
resources by the public and the maintenance of adequate visibility. 



Tex. Health & Safety Code Ann. § 382.002 (West Supp. 2000). The Legislature's mandate is that
the Act is to be "vigorously enforced." Id.

 In furtherance of this policy, the Act requires that any person intending to
construct, modify, or operate a facility that may emit air contaminants first apply to the TNRCC
for an air quality permit that must be granted before that person may construct or operate the
facility. See id. §§ 382.051, .0518. Once the TNRCC determines that an application is complete,
the applicant must provide the public with notice of its application. See id. § 382.056. This
requirement affords individuals who may be affected by the grant or denial of the permit a
meaningful opportunity to voice their concerns and participate in the permitting process by
requesting a public hearing on the permit application. In certain circumstances, the Commission
may be required to grant the request. See id.; 30 Tex. Admin. Code § 55.27(b)(1999). In the
past, this Court has jealously protected the public's right to a hearing. See, e.g., Heat Energy
Advanced Technology, Inc. v. West Dallas Coalition for Envtl Justice, 962 S.W.2d 288, 289 (Tex.
App.--Austin 1998, pet. denied).

 One of the statutes governing this hearing process at the time Grissom submitted
his request in 1998 provided that "the commission or its delegate shall hold a hearing on the
permit application or permit renewal application before granting the permit or renewal if a person
who may be affected by the emissions . . . requests a hearing within the period set by commission
rule." Act of May 4, 1995, 74th Leg., R.S., ch. 149, § 2, 1995 Tex. Gen. Laws 997 (Tex.
Health & Safety Code Ann. § 382.056(d), since amended by Act of May 30, 1999, 76th Leg.,
R.S., ch. 62, § 11.04(c), ch. 1350, § 5(g),1999 Tex. Gen. Laws 4570, 4574). However, this
entitlement is qualified. The statute proceeds to specify circumstances in which a hearing request
shall not be granted, even if submitted by "a person who may be affected": 

 The Commission shall not hold a hearing if the basis of a request by a
person who may be affected is determined to be unreasonable. Reasons for which
a request for a hearing on a permit amendment, modification, or renewal shall be
considered to be unreasonable include, but are not limited to, an amendment,
modification, or renewal that would not result in an increase in allowable emissions
and would not result in the emission of an air contaminant not previously emitted.



Id. (emphasis added). Former section 5.115 of the Texas Water Code, a provision generally
applicable to all TNRCC permit applications, went even further in qualifying a requester's right
to a hearing: "The commission is not required to hold a hearing if the commission determines
that the basis of a person's request for a hearing as an affected person is not reasonable or is not
supported by competent evidence." (3) Act of May 28, 1995, 74th Leg., R.S., ch. 882, § 1, 1995
Tex. Gen. Laws 4381 (Tex. Water Code Ann. § 5.115(a), since amended by Act of May 30,
1999, 76th Leg., R.S., ch. 1350, § 1, 1999 Tex. Gen. Laws 4570) (emphasis added); 30 Tex.
Admin. Code § 55.27(b)(2). 

 In support of the issues they raise on appeal, United Copper and the TNRCC point
out that Grissom submitted his hearing request without offering any competent evidence in support
of his request and maintain that the request was unreasonable in light of the uncontroverted
evidence indicating that the emissions would not have any adverse affect on Grissom or his
family. Furthermore, they argue that he is not a "person who may be affected" as contemplated
by the applicable statutes. See Act of May 4, 1995, 74th Leg., R.S., ch. 149, § 2, 1995 Tex.
Gen. Laws 997 (Tex. Health & Safety Code Ann. § 382.056(d), since amended); Tex. Water
Code Ann. § 5.115(a) (West Supp. 2000). Appellants submit that, in light of these circumstances
and the plain language of the statutory provisions restricting a requestor's right to a hearing, the
district court erred in overturning the Commission's decision because the order was not invalid,
arbitrary, or unreasonable. See Tex. Health & Safety Code Ann. § 382.032(e). We agree with
appellants. In this case, Grissom's right to a hearing on the permit request is premised on former
section 382.056(d) of the Health and Safety Code, which in turn is qualified by the limitations
found later in that same section and former section 5.115(a) of the Water Code. See Act of May
4, 1995, 74th Leg., R.S., ch. 149, § 2, 1995 Tex. Gen. Laws 997 (Tex. Health & Safety Code
Ann. § 382.056(d), since amended); Act of May 28, 1995, 74th Leg., R.S., ch. 882, § 1, 1995
Tex. Gen. Laws 4381 (Tex. Water Code Ann. § 5.115(a), since amended). Even if we assume
that Grissom is "a person who may be affected" by the granting of the permit, we do not find
invalid, arbitrary, or unreasonable the Commission's determination that Grissom's request was
unreasonable and unsupported by competent evidence.


Reasonableness

 In two separate statutory provisions, the Legislature granted the Commission the
sole authority to decide whether a request for a public hearing on a permit application is
unreasonable. See Act of May 4, 1995, 74th Leg., R.S., ch. 149, § 2, 1995 Tex. Gen. Laws 997
(Tex. Health & Safety Code Ann. § 382.056(d), since amended); Act of May 28, 1995, 74th
Leg., R.S., ch. 882, § 1, 1995 Tex. Gen. Laws 4381 (Tex. Water Code Ann. § 5.115(a), since
amended). In the event the Commission determines that a hearing request is unreasonable, it shall
deny the request. See Act of May 4, 1995, 74th Leg., R.S., ch. 149, § 2, 1995 Tex. Gen. Laws
997 (Tex. Health & Safety Code Ann. § 382.056(d), since amended). Aside from articulating one
particular instance where a hearing request is unreasonable per se, the statute provides no
guidance on how the Commission is to make this determination. (4) The Commission has therefore
promulgated its own rules which prescribe consideration of the following factors:


(1) whether the request is based solely on concerns outside the jurisdiction of the
commission; and


(2) whether the request is based on concerns related to other media that cannot be
addressed by the pending application, even though within the jurisdiction of
the commission;


(3) whether the project is an emissions, pollutant, or source reduction project or
a project to improve the quality of waste to be discharged . . .;


(4) whether the project is mandated by commission rule;


(5) the location of the proposed project;


(6) whether the applicant requests authority to substitute an equivalent or more
efficient control device;


(7) whether the hearing request is based solely on something other than concerns
about pollution;


(8) the extent to which the person requesting a hearing is likely to be impacted by
the emissions, discharge, or waste; and


(9) the applicant's compliance history.



30 Tex. Admin. Code § 55.31 (1999). In considering these factors, all of which are generally
applicable to all hearing requests submitted to the TNRCC, we note that Grissom's hearing
request: (1) is not based solely on concerns outside the commission's jurisdiction; (2) is not based
on concerns related to other media that cannot be addressed by the pending application; (3) does
not relate to an emission or pollution reduction project; (4) is not mandated by commission rule;
(6) does not involve a request for authority to substitute an equivalent or more efficient control
device; and (7) is not based on something other than concerns about pollution. United Copper has
no compliance history to consider for purposes of factor nine. 

 Of these factors, numbers three, four, six, and nine all involve requests for
hearings on permit applications involving permit-holders with pre-existing operations, unlike the
situation here where United Copper has requested a new permit. Factors one, two, and seven all
relate to hearing requests based on concerns that are beyond the Commission's jurisdiction, do
not relate to the permit application at issue, or are unrelated to concerns about pollution. Whereas
Grissom's request is based upon concerns that are within the Commission's jurisdiction, related
to the permit application at issue, and involves concerns about pollution, none of these factors
bear directly on Grissom's request. 

 We are left with only two factors that are of any significance to our inquiry here:
the fifth factor demands that the Commission consider "the location of the proposed project," and 
the eighth factor demands consideration of "the extent to which the person requesting a hearing
is likely to be impacted by the emissions, discharge, or waste." Tex. Admin Code § 55.31
(a)(5),(8). As both parties acknowledge, the Grissoms live approximately two miles from the
proposed facilities, and one of the sons attends school about one mile from the site. In weighing
the likelihood that Grissom or his family will be impacted by the emissions from these distances,
the Commission was free to consider the results of the "air dispersion computer modeling" that
United Copper submitted in conjunction with its permit application. (5) This data, which the
Commission determined to be accurate and reliable, indicated that the maximum ground-level
concentrations of the air contaminants caused by the plant's operation would be far less than the
concentrations allowed under both state and federal environmental regulations. This data
suggested that the emissions from the facilities would probably not negatively impact Grissom or
his family.

 In the absence of anything offered to the contrary, the Commission could
reasonably conclude that in light of the Grissoms' distance from the plant and the low level of
emissions projected, Grissom and his family would in all likelihood not be affected. (6) There was
no factual basis suggesting anything to the contrary. Considering the information the Commission
had to consider in relation to the factors set out in its rules, we are unable to conclude that the
Commission's denial of Grissom's request was invalid, arbitrary, or unreasonable. We therefore
sustain appellants' issue.


Competent Evidence

 In addition to the statutory requirement that a hearing request be reasonable, the
pre-1999 Water Code required that persons requesting a contested-case hearing offer competent
evidence in support of the request. See Act of May 28, 1995, 74th Leg., R.S., ch. 882, § 1, 1995
Tex. Gen. Laws 4381 (Tex. Water Code Ann. § 5.115(a), since amended). As both parties
acknowledge, Grissom submitted his request without offering any evidence, much less competent
evidence, in support of his request. Despite his failure to satisfy this statutory requirement,
Grissom nevertheless argues--and the district court agreed--that at the very least he must be granted
an opportunity--and indeed is entitled--to offer competent evidence in support of his request in the
context of an adjudicative hearing.

 In considering this argument, we observe that, in addition to failing to offer any
guidance on what constitutes a reasonable hearing request, the statute is silent as to what form of
proceeding, if any, is necessary to make the preliminary determination of whether the statutory
prerequisites for a hearing request are met. The Commission addressed this uncertainty by
promulgating its own rules to apply in these circumstances. See 30 Tex. Admin. Code § 55.27(a). 
By its rules, the Commission has provided that to the extent it must decide whether a request for
a hearing should be granted, it is not required to hold a contested-case hearing: "The
determination of the validity of a hearing request is not, in itself, a contested case subject to the
APA." 30 Tex. Admin. Code § 55.27. The Commission is only required to evaluate the hearing
request at a scheduled public Commission meeting where it may decide to proceed in one of four
possible ways. (7) Consequently, the preliminary determinations of whether a request is reasonable
and supported by competent evidence may be made without ever conducting an adjudicative
hearing. Referring the hearing request to the State Office of Administrative Hearings ("SOAH")
for a preliminary contested-case hearing solely on the issue of whether the request for a hearing
should be granted, as the Commission determined was not appropriate here, is only one available
option. See id. § 55.27(a)(4). In the event the Commission determines on its own that the hearing
request does not meet the statutory requirements, it may deny the request and proceed to act on
the application. See id. § 55.27(a)(1).

 Although Grissom points out that the TNRCC failed to indicate in its notice that
his request needed to be supported by competent evidence, the Water Code as it read in 1995
plainly required that Grissom offer such evidence. Because everyone is charged with knowledge
of the law, Grissom was charged with knowledge of this requirement, even in the absence of the
Commission advising him of this. See Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523,
525 n. 3 (Tex. 1990). Furthermore, contrary to his claim, Grissom had sufficient opportunity to
offer his own evidence in support of his request, as well as to respond to the challenges United
Copper had lodged against his request. See 30 Tex. Admin. Code §§ 55.21, 55.26(f) (1999).

 As the person requesting the hearing, Grissom--along with United Copper, OPIC,
and the TNRCC director--was free to submit written comments, data, and other information to
support his position that the hearing request should be granted. See 30 Tex. Admin. Code
§ 55.26(f). In a letter sent to Grissom and all the other parties interested in United Copper's
permit application, the Commission stated that, although it would not permit oral argument or
public comment at the meeting on the issue of whether the request should be granted, it might
wish to use the public meeting as a forum to ask questions of the person requesting the hearing. 
The letter also stated that the Commission's decision would be based on "the hearing requests,
written responses to the hearing request, any written replies to those responses, and any response
to questions." (Emphasis added.) Thus, Grissom could have offered evidence in support of his
request or otherwise challenged United Copper's objections to his request at any time up to six
days before the Commission meeting. See id. Although Grissom's ignorance of the evidentiary
requirement at the time he first submitted his request is quite understandable, we believe his
failure to offer competent evidence after receiving United Copper's written response to his request
is not so easily excused. After all, United Copper's response specifically referred to and
discussed at length Grissom's failure to support his request with competent evidence as required
by the Water Code.

 Furthermore, we observe that Grissom was free to attend the public meetings held
for the purpose of receiving public comment on the permit application, as well as the very meeting
where the Commission evaluated his request. At the latter meeting, Grissom could have
responded to any questions the Commission might have had concerning his request. Despite these
opportunities, Grissom nevertheless chose not to offer any evidence in support of his request or
to otherwise respond to the challenges United Copper had made to his request. For this reason,
we reject Grissom's argument that he was deprived of any opportunity to offer evidence in support
of his request.

 In light of the clear legislative mandate that those requesting administrative hearings
before the TNRCC support their requests with competent evidence and in the absence of any
constitutional, statutory, or regulatory provision requiring the Commission to hold a hearing to
make this preliminary determination, we cannot conclude that the Commission's decision to deny
Grissom's request on this basis was invalid, arbitrary, or unreasonable. We therefore sustain
appellant's second issue.


CONCLUSION


 Having sustained two of the three issues raised by appellants, we reverse the district
court's judgment and render judgment affirming the Commission's order.



 

 Mack Kidd, Justice

Before Justices Jones, Kidd and Patterson

Reversed and Rendered

Filed: February 3, 2000

Publish

1. Three other hearing requests were also filed by concerned residents in the area. Although
their hearing requests were also denied, these individuals did not seek judicial review of the
TNRCC's decision. The issue in this appeal is thus limited to the denial of Grissom's request.
2. Initially, Citizens for Healthy Growth ("Citizens"), a local community action group
interested in protecting the local environment and aligned with Grissom, was also a party at the
district court level. However, the Commission and United Copper filed pleas to the jurisdiction
and successfully argued that Citizens lacked standing to bring suit. The district court granted the
pleas to the jurisdiction and dismissed Citizens' claims, leaving only Grissom's cause of action. 
Citizens chose not to challenge the district court's ruling and is not a party to this appeal.
3. When the former Texas Air Control Board and Texas Water Commission were merged and
became the Texas Natural Resources Conservation Commission in 1991, the body of statutory law
applicable to the TNRCC remained divided between the Texas Water Code and the Texas Health
and Safety Code. All the parties concede here that both former section 382.056(d) of the Texas
Health and Safety Code and former section 5.115 of the Texas Water Code govern Grissom's
hearing request. See Act of May 4, 1995, 74th Leg., R.S., ch. 149, § 2, 1995 Tex. Gen. Laws
997 (Tex. Health & Safety Code Ann. § 382.056(d), since amended); Act of May 28, 1995, 74th
Leg., R.S., ch. 882, § 1, 1995 Tex. Gen. Laws 4381 (Tex. Water Code Ann. § 5.115(a), since
amended).
4. The statute provides: "Reasons for which a request for a hearing on a permit amendment,
modification, or renewal shall be unreasonable include, but are not limited to, an amendment,
modification, or renewal that would not result in an increase in allowable emissions and would
not result in the emission of an air contaminant not previously emitted." Act of May 4, 1995,
74th Leg., R.S., ch. 149, § 2, 1995 Tex. Gen. Laws 997 (Tex. Health & Safety Code Ann.
§ 382.056(d), since amended) (emphasis added).
5. Air dispersion computer modeling is a method commonly used by the TNRCC, the United
States Environmental Protection Agency, and companies applying for air quality permits to
evaluate the possible impacts of emissions on humans and the environment. Air dispersion
computer modeling predicts the maximum ground-level concentrations of air contaminates at
various off-site locations, as would result from the facility's operations in the event the requested
permit were issued.
6. It is important to note that United Copper's response and the supporting data were not
withheld from Grissom. Rather, the record indicates that United Copper served Grissom with a
copy of its response to his request. Thus, Grissom was aware of the bases of United Copper's
objections to his hearing request. Grissom nevertheless chose not to respond.
7. Section 55.27 provides that upon evaluating the hearing request at the scheduled hearing,
the Commission may:


(1) determine that a hearing request does not meet the requirements of this
subchapter, and act on the application; 


(2) determine that a hearing request does not meet the requirements of this
subchapter, and refer the application to a public meeting to develop public
comment before acting on the application; 


(3) determine that a hearing request meets the requirements of this subchapter, and
direct the chief clerk to refer the application to SOAH for a hearing; or 


(4) direct the chief clerk to refer the hearing request to SOAH. The referral may
specify that SOAH should prepare a recommendation on the sole question of
whether the request meets the requirements of this subchapter . . . . If the
commission refers the hearing request to SOAH it shall be processed as a
contested case under the APA. 


30 Tex. Admin. Code § 55.27(a).


in the area. Although
their hearing requests were also denied, these individuals did not seek judicial review of the
TNRCC's decision. The issue in this appeal is thus limited to the denial of Grissom's request.
2. Initially, Citizens for Healthy Growth ("Citizens"), a local community action group
interested in protecting the local environment and aligned with Grissom, was also a party at the
district court level. However, the Commission and United Copper filed pleas to the jurisdiction
and successfully argued that Citizens lacked standing to bring suit. The district court granted the
pleas to the jurisdiction and dismissed Citizens' claims, leaving only Grissom's cause of action. 
Citizens chose not to challenge the district court's ruling and is not a party to this appeal.
3. When the former Texas Air Control Board and Texas Water Commission were merged and
became the Texas Natural Resources Conservation Commission in 1991, the body of statutory law
applicable to the TNRCC remained divided between the Texas Water Code and the Texas Health
and Safety Code. All the parties concede here that both former section 382.056(d) of the Texas
Health and Safety Code and former section 5.115 of the Texas Water Code govern Grissom's
hearing request. See Act of May 4, 1995, 74th Leg., R.S., ch. 149, § 2, 1995 Tex. Gen. Laws
997 (Tex. Health & Safety Code Ann. § 382.056(d), since amended); Act of May 28, 1995, 74th
Leg., R.S., ch. 882, § 1, 1995 Tex. Gen. Laws 4381 (Tex. Water Code Ann. § 5.115(a), since
amended).
4. The statute provides: "Reasons for which a request for a hearing on a permit amendment,
modification, or renewal shall be unreasonable include, but are not limited to, an amendment,
modification, or renewal that would not result in an increase in allowable emissions and would
not result in the emission of an air contaminant not previously emitted." Act of May 4, 1995,
74th Leg., R.S., ch. 149, § 2, 1995 Tex. Gen. Laws 997 (Tex. Health & Safety Code Ann.
§ 382.056(d), since amended) (emphasis added).
5. Air dispersion computer modeling is a method commonly used by the TNRCC, the United
States Environmental Protection Agency, and companies applying for air qual